UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAMARIFRED REED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C11-0866JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on Defendant Allstate Insurance Company's ("Allstate") motion for partial summary judgment (Dkt. # 12). Allstate argues that Plaintiffs LaMarifred and Corliss Reed's ("the Reeds") contract-based claims[1] are barred

---

[1] Allstate's motion is directed generally to the Reeds' "contractual claims" (Mot. (Dkt. # 12) at 1) and does not specify which counts of the Reeds' amended complaint it seeks to dismiss. Among others, the Reeds allege claims for breach of the implied covenant of good faith and fair dealing and RCW 48.01.030 (Count 1), and breach of contract (Count 2). (Am. Compl. (Dkt. #

ORDER- 1

by the one-year suit limitation in the Reeds' homeowners insurance policy. (*See generally* Mot. (Dkt. # 12).) The Reeds do not dispute the validity of the one-year suit limitation provision. (Resp. (Dkt. # 18) at 11.) They argue, however, that summary judgment is improper because, at the very least, there are material issues of fact as to whether Allstate waived the limitation period or whether it was tolled under the doctrines of equitable tolling and/or equitable estoppel. (*Id.*) Having considered the submissions of the parties, the balance of the record, and the relevant law, the court GRANTS Allstate's motion for partial summary judgment (Dkt. # 12).[2]

---

16) at 14-15.) Count 1, therefore, alleges violations of both contractual and statutory duties. (*Id.* ¶ 86.) The court construes Allstate's motion as seeking to dismiss Count 2 and only the portion of Count 1 that is directed to Allstate's contractual duty of good faith. Because neither party has discussed whether the statutory duty of good faith exists independently of a similar contractual duty, the court leaves this question for another day.

[2] Allstate has requested oral argument (Mot. at 1), but the Reeds have not (Resp. at 1 (containing no request for oral argument in the caption as require by Local Rule W.D. Wash. CR 7(b)(4))). The general rule is that the court may not deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied. *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964). Federal Rule of Civil Procedure 56, however, does not require a hearing where the opposing party does not request it. *See, e.g.*, *Demarest v. United States*, 718 F.2d 964, 968 (9th Cir. 1983). Moreover, oral argument is not necessary where the non-moving party suffers no prejudice. *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984). "When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id.* Here, the Reeds have not requested oral argument, the parties have fully briefed Allstate's motion for summary judgment and submitted supporting declarations, and oral argument would not be of assistance to the court in this instance. For these reasons, the Reeds will not be prejudiced by the absence of oral argument. The court therefore determines that Allstate's motion is appropriate for decision without oral argument.

## II. BACKGROUND

This case stems from a fire at the Reeds' residence in Kent, Washington, on April 27, 2009.[3] At the time of the fire, the Reeds were covered by an Allstate homeowners insurance policy with a personal property damage limit of $173,250.00. (Thomas Decl. (Dkt. # 21) Ex. C.) The policy included a one-year suit limitation provision, which stated: "No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." (Borthwick Decl. (Dkt. # 12-16) ¶ 3, Ex. A (emphasis in original).)

The Reeds hired a public adjustor to assist them with adjusting, negotiating, and settling their claim with Allstate. (Thomas Decl. ¶¶ 2-3.) In August 2009, the Reeds submitted to Allstate their Personal Property Claim with Proof of Loss ("the Claim"), which included an inventory of each damaged item, depreciation of each item, and valuation of each item. (*Id.* ¶ 13, Ex. E.) The Claim stated that the replacement cost value of the Reeds' personal property loss was $198,536.17 and the actual cash value was $162,702.18. (Thomas Decl. ¶ 13.)

On August 18 and September 1, 2009, Allstate acknowledged receipt of the Claim. (Thomas Decl. Exs. F, G.) The September 1, 2009 correspondence from Allstate indicated that it was evaluating the contents of the inventory, but the correspondence did not raise any specific questions or issues regarding the Claim. (*Id.* Ex. G.) On October

---

[3] The following facts are undisputed unless noted otherwise.

20, 2009, the Reeds contacted Allstate because Allstate had failed to respond to the Claim, present specific questions, or raise any issues with the Claim. (Thomas Decl. ¶ 18, Ex. J.) The Reeds notified Allstate that they were concerned that Allstate's "Contents Estimating System" ("CES"), the computer program Allstate uses to value claims, would present an underpriced and over-depreciated valuation for their personal property damage. (Thomas Decl. Ex. J.) The Reeds demanded that Allstate provide a response or pay uncontested amounts before October 30, 2009. (Thomas Decl. Ex. J.)

On October 31, 2009, Allstate sent the Reeds a letter that quoted the one-year suit limitation provision. (Borthwick Decl. Ex. E.) On November 2, 2009, Allstate sent the Reeds a letter indicating that it was continuing to investigate the loss. (Thomas Decl. ¶ 20, Ex. L.) Then on November 9, 2009, Allstate notified the Reeds that it had estimated that the replacement cost value of the Reeds' personal property loss was $175,082.78 and the actual cash value was $114,791.03.[4] (Thomas Decl. ¶ 21, Ex. M.) Allstate's valuation was based on its CES. (*Id.*)

On November 25, 2009, the Reeds requested that Allstate state with specificity the reasons items were reduced in replacement cost value and the reasons that items were increased in depreciation. (*Id.* ¶ 23, Ex. N.) On December 2, 2009, Allstate sent a letter

---

[4] There appears to be some dispute as to the total amount Allstate owed to the Reeds based on its valuation of their personal property loss. The CES summary indicates that, based on advances towards the Claim, the "Amount Payable" was $78,420.17 and the "Balance of Recoverable Depreciation" was $58,920.57 (Thomas Decl. Ex. M); however the Reeds maintain that even considering Allstate's advance payments, it owed them over $80,000.00 based on its own valuation (Thomas Decl. ¶ 22). Allstate asserts that it has issued payments totaling $117,991.03 on the Reeds' Claim. (Borthwick Decl. ¶ 8.) In any event, this factual dispute is immaterial for purposes of this summary judgment motion.

to the Reeds stating that its investigation of the loss was continuing. (Thomas Decl. ¶ 24, Ex. O.) Allstate did not raise any specific questions or general issues regarding the items in the Reeds' Claim. (Thomas Decl. Ex. O.)

On December 10, 2009, Allstate, through its counsel, responded the Reeds' November 25, 2009 letter. (Thomas Decl. Ex. P.) Allstate acknowledged the Reeds' general objection to its valuation of the Claim, but noted that they did not indicate the specific items that they disputed and did "not provide any specific information upon which Allstate can understand in any way what documents or information" the Reeds had to support their valuation. (*Id.*) Allstate also indicated that it wanted to move the matter into appraisal and appointed John Colvard as its appraiser. (*Id.*) On January 19, 2010, the Reeds agreed to have the matter submitted to appraisal and appointed John Engel as their appraiser. (Thompson Decl. Ex. S.)

Through the end of December 2009 and the first several months of 2010, the parties exchanged numerous letters in which they each demanded that the other identify the disputed items and substantiate their valuations. (Thomas Decl. Exs. Q, R, S, T, V, W, X.) Neither party would acquiesce to the other's requests.

In early March 2010, Mr. Engel contacted Mr. Colvard regarding the Reed appraisal and learned that Mr. Colvard did not know he had been appointed Allstate's appraiser for this matter. (Engel Decl. (Dkt. # 19) ¶ 9.) Therefore, Mr. Colvard was not in a position to discuss the appointment of an umpire, which, pursuant to the Reeds' homeowners insurance policy, was to be agreed upon by the appraisers. (*Id.*) Shortly thereafter, however, the appraisers agreed upon James Beecher as the umpire. (*Id.* ¶ 10.)

Nevertheless, on March 8, 2010, after the appraisers had chosen Mr. Beecher as the umpire, Allstate filed a motion in the Washington State Superior Court for King County requesting the appointment of an umpire. (*Id.*; *see also* Freeman Decl. (Dkt. # 20) ¶ 2, Ex. A.) The motion also asked the court to order the Reeds to present a list of disputed items. (Freeman Decl. Ex. A.) On March 17, 2010, Allstate's counsel informed the Reeds that Allstate would withdraw its motion to appoint an umpire but would still ask the court to order the Reeds to present a list of disputed personal property items. (Thomas Decl. Ex. Y.) At this time, Allstate also asked the Reeds to provide supporting documentation for their valuation of their Claim. (*Id.*) On March 19, 2010, the Reeds notified Allstate that the fire had destroyed all of their records, and they offered to present notes from the inventory company that had performed the valuation. (Thomas Decl. ¶ 35.)

On March 18, 2010, Allstate filed an amended motion to compel the Reeds to provide information that was "necessary" for the appraisal.[5] (Leid Decl. (Dkt. # 12-1) ¶ 7, Ex. E at 1.) On March 31, 2010, Superior Court Judge Schapira ordered each party to produce a list of items not in dispute by April 18, 2010, and to produce a list of disputed items with supporting documentation by April 23, 2010. (Freeman Decl. Ex. B.)

---

[5] The Reeds have presented evidence that contradicts Allstate's position that the documents sought in the state court action were necessary for the appraisal to go forward. According to Mr. Engel, neither he nor Mr. Colvard needed this information because their appraisals were independent of those of the parties. (Engel Decl. ¶ 11.) Mr. Engel thus asserts that Allstate had no reason to refuse to permit the appraisal to go forward pending the Reeds' document production. (*Id.*)

Allstate timely provided the Reeds with its list of disputed terms and provided the same supporting documentation that it provided to the Reeds in November 2009, namely the CES report. (Freeman Decl. ¶ 6; Leid Decl. Ex. G.) The Reeds timely provided Allstate with the list of disputed items (Thomas Decl. ¶ 36), but they were unable to acquire supporting documentation because the content inventory company's notes were incomplete and in shorthand, a fact that was previously unknown to the Reeds (Freeman Decl. ¶ 5). The notes needed to be interpreted by the person who drafted the content inventory. (Freeman Decl. ¶ 5.) The Reeds offered to make arrangements for Allstate to interview the drafter, but Allstate declined. (*Id.*)

In May 2010, Allstate demanded that the Reeds provide it with a report from the drafter of the content inventory explaining the pricing of each item. (*Id.* ¶ 9.) The parties disagreed as to who should pay for such a report. (*Id.*; Leid Decl. Ex. H.) Consequently, on June 1, 2010, Allstate filed a motion in Superior Court to compel the Reeds' compliance with Judge Schapira's March 31, 2010 order. (Leid Decl. Ex. I.) Pursuant to negotiations between the parties in which the Reeds' public adjustor agreed to pay for the content inventory report, Allstate's counsel agreed to strike the motion. (Freeman Decl. ¶¶ 11, 12.) Allstate, however, never struck the motion and Judge Schapira issued an order on June 28, 2010 requiring the Reeds to provide supporting documentation for each item they believed to be in dispute by July 8, 2010, and precluding them from recovering for any item for which they failed to provide supporting information. (Freeman Decl. Ex. C.) Judge Schapira also ordered the Reeds to pay Allstate $150 for filing the motion. (*Id.*)

The Reeds did not learn of Judge Schapira's June 28, 2010 order until approximately one month later when Allstate responded to a motion to compel that the Reeds had filed. (Freeman Decl. ¶ 12.) The Reeds explained to Judge Schapira that Allstate's prior motion to compel was supposed to be stricken. (*Id.*) Judge Schapira entered an order denying the Reeds' motion to compel and reaffirming her prior order requiring payment of $150 to Allstate, but she declined to penalize the Reeds for their failure to provide supporting documentation by July 8, 2010. (Freeman Decl. Ex. D.)

On October 22, 2010, Allstate filed a motion to dismiss the action in Superior Court. (Leid Decl. Ex. K.) Allstate argued that the court had ruled on the discovery dispute and that the Reeds were precluded from recovery because of their failure to comply with the court's prior orders. (*Id.*) The Reeds did not respond to Allstate's motion. (Leid Decl. Ex. L.) On November 16, 2010, Judge Schapira granted Allstate's motion and entered an order precluding the Reeds from recovering for any disputed items because they had failed to provide supporting documentation by July 8, 2010. (*Id.*)

On or about April 20, 2011, the Reeds initiated the instant action in the Washington State Superior Court for Pierce County. (Not. of Removal (Dkt. # 1).) The Reeds served Allstate on May 11, 2011, and Allstate timely removed to this court on May 24, 2011. (*Id.*) On September 23, 2011, the Reeds filed a first amended complaint in which they brought claims for breach of the implied covenant of good faith and fair dealing, breach of contract, unfair business practices, and violation of the Insurance Fair Conduct Act. (*See generally* Am. Compl. (Dkt. # 16).)

## III. ANALYSIS

As noted above, Allstate has moved for summary judgment on the Reeds' contract-based claims, arguing that the one-year suit limitation provision in their homeowners insurance policy bars the claims. (*See generally* Mot.) The Reeds maintain, however, that Allstate waived the one-year suit limitation provision or that the limitation period was tolled pursuant to equitable tolling or equitable estoppel. (*See generally* Resp.) At the very least, the Reeds argue, there are issues of material fact that preclude summary judgment. (*Id.*)

There is no dispute that the Reeds filed suit nearly two years after April 27, 2009 fire that triggered the one-year suit limitation period. Accordingly, summary judgment in Allstate's favor on the contract-based claims is appropriate unless the Reeds establish issues of material fact as to the elements of waiver, equitable tolling, or equitable estoppel. For the reasons described below, the court concludes that the Reeds have not raised the necessary issues of material fact, and therefore partial summary judgment in Allstate's favor is proper.

**A. Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a

matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.  Waiver**

The Reeds first argue that Allstate waived the one-year suit limitation provision.  (Resp. at 13-14.)  "[T]he doctrine of waiver requires a showing that the insurer has voluntarily and intentionally relinquished a known right or that its conduct warrants an inference of the relinquishment of such right."  *James E. Torina Fine Homes, Inc. v. Mutual of Enumclaw Ins. Co.*, 74 P.3d 648, 651-52 (Wash. Ct. App. 2003) (citing *Saunders v. Lloyd's of London*, 779 P.2d 249, 254 (Wash. 1989)).  In order "for the insurer's decision to be voluntary, the insurer must have made a conscious decision to relinquish the right."  *Id.*  If intent to waive is inferred based on conduct, that conduct "cannot be consistent with any interpretation other than intent to waive—any other reasonable explanation precludes applying waiver."  *Id.*  The burden of establishing waiver is on the party asserting it.  *Jones v. Best*, 950 P.2d 1, 241 (Wash. 1998).

Here, the Reeds contend that the court can infer Allstate's intent to waive because (1) it continued with claims administration after the expiration of the one-year suit limitation period, and (2) filed motions in state court seeking the production of information that it believed was necessary to adjust the Claim.  (Resp. at 14.)  The Reeds

also point to the fact that in August 2010, Allstate defended the Reeds' state court motion to compel.  (*Id.*)

The court is not persuaded by the Reeds' arguments.  Allstate's conduct cannot "be interpreted as consistent *only* with an intent to waive the time limit defense, rather than simply to administer an ongoing claim" or defend itself in state court.  *Chi v. Allstate Ins. Co.*, No. C08-855MJP, 2009 WL 2473512, at *3 (W.D. Wash. Aug. 6, 2009). Moreover, under Washington statutory law, Allstate's investigation of the claim does not constitute waiver of any defense, which would include a contractual suit limitation period.  RCW 48.18.470 ("None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder: . . . Investigating any loss or claim under any policy or engaging in any negotiations looking toward a possible settlement of such loss or claim.").  Thus, based on the forgoing case and statutory law, and viewing the evidence in the light most favorable to the Reeds, the court cannot conclude that the Reeds have raised a genuine issue of material fact with respect to their defense of waiver.

**C.  Equitable Tolling**

Next, the Reeds argue that the limitation period should be equitably tolled because Allstate acted in bad faith.  (Resp. at 14-15.)  "Equitable tolling is a legal doctrine that allows a claim to proceed when justice requires it, even though it would normally be barred by a statute of limitations."  *Trotzer v. Vig*, 203 P.3d 1056, 1062 n.9 (Wash. Ct. App. 2009).  "The party asserting that equitable tolling should apply bears the burden of proof."  *Id.* at 1062.  The usual predicates for equitable tolling are:  (1) bad faith,

deception, or false assurances by the defendant; and (2) the exercise of diligence by the plaintiff.[6] *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998); *see also Trotzer*, 203 P.3d at 1062. In the insurance context, an insurer acts in bad faith when its breach of the insurance contract is "unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). "Whether an insurer acted in bad faith is a question of fact." *Id.*

The Reeds argue that Allstate acted in bad faith as follows: (1) "Allstate refused to provide the Reeds with any information pertaining to the reasons that Allstate reduced the Reeds' claim valuation"; (2) "Allstate refused to properly respond to the Reeds' personal property Claim Proof of Loss"; (3) "Allstate created its own inventory and value estimate and, using that estimate, presented an extremely low settlement offer for the actual cash value of the personal property claim"; and (4) "Allstate continues to refuse to respond to the Reed's [sic] claim, having paid *only* Allstate's under-valuation of the claim without justifying the reductions." (Resp. at 15 (emphasis in original).)

Allstate responds that it did not act in bad faith because it properly evaluated the Reeds' Claim and had issued the total actual cash value amount by November 2009. (Reply (Dkt. # 22) at 6.) Allstate further maintains that when the valuation dispute arose,

---

[6] As this court recently noted in *Putz v. Golden*, No. C10-0741JLR, 2012 WL 208110 (W.D. Wash. Jan. 24, 2012), the Washington Supreme Court has expressly recognized that equitable tolling is not limited to circumstances "where one of the predicates of bad faith, deception, and false assurances [i]s shown." *Id.* at *10 (quoting *In re Pers. Restraint of Carter*, 263 P.3d 1241, 1247 (Wash. 2011)). Nevertheless, in this case, neither party has asserted the applicability of *Carter*, and the court concludes that the potentially broader application of equitable tolling recognized in *Carter* is not justified by the facts here.

it invoked the policy's appraisal provision to facilitate settlement and then provided the Reeds with the necessary information for the appraisal pursuant to Judge Schapira's March 31, 2010 order. (*Id.*)

Viewing the evidence in the light most favorable to the Reeds, the court concludes that there is a genuine issue of material fact as to whether Allstate acted unreasonably and thus in bad faith. *See Smith*, 78 P.3d at 1277. Among other things, the parties dispute whether Allstate's valuation was reasonable and whether Allstate acted reasonably in halting the independent appraisal process pending the Reeds' production of documentation. (*See supra* at 6 n.2.)

Nevertheless, for equitable tolling to apply, the Reeds must also have diligently pursued their rights. *Millay*, 955 P.2d at 797. The Reeds acknowledge that diligence is a predicate for equitable tolling, but they make no argument whatsoever on this element in their briefing. (*See generally* Resp.) It is the Reeds' responsibility—not the court's—to identify genuine issues for trial. *See, e.g.*, *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that it is not the district court's responsibility to "scour the record in search of a genuine issue of triable fact") (citation omitted)); *Bohnert v. Mitchell*, No. CV-08-2303-PHX-LOA, 2010 WL 4269569, at *9 (D. Ariz. Oct. 26, 2010) (granting summary judgment to the defendant where the plaintiff "totally failed to address his negligence claim in his response and, thereby, failed to set forth specific facts showing that there is a genuine issue for trial" (internal quotation omitted)). "As the Seventh Circuit observed in its now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'"

*Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Moreover, there are undisputed facts in the record establishing that the Reeds did not act diligently even though Allstate apprised them of the one-year suit limitation in an October 2009 letter (Borwith Decl. Ex. E). For example, the first three examples of bad faith that the Reeds cited in their brief occurred and were known to them within the first year after the fire. Indeed, as early as December 2009, the Reeds, through their public adjustor, accused Allstate of violating Washington State insurance regulations and acting in bad faith. (Thompson Decl. Ex. Q.) The Reeds could have brought timely claims for breach of the duty of good faith and breach of contract, but failed to do so and thus did not act diligently. *See Gunnier v. Yakima Heart Ctr., Inc., P.S.*, 953 P.2d 1162, 1168 (Wash. 1998) (holding that equitable tolling did not apply because the plaintiff could have filed her claim within the limitation period but did not do so and thus did not act with diligence).

In sum, viewing the evidence in the Reeds' favor, they have raised a material issue of fact as to Allstate's bad faith, but they have not satisfied this burden with respect to diligence. Accordingly, the court concludes that equitable tolling does not preclude summary judgment here. *See Galen*, 477 F.3d at 658 ("To withstand summary judgment, [the non-moving party] must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the *essential elements* of his case that he must prove at trial." (emphasis added)).

**D. Equitable Estoppel**

Finally, the Reeds assert that Allstate is equitably estopped from asserting the one-year suit limitation provision to bar their contract-based claims. (Resp. at 15.) "Estoppel is appropriate to prohibit a defendant from raising a statute of limitations defense when a defendant has 'fraudulently or inequitably invited a plaintiff to delay commencing suit until the applicable statute of limitations has expired.'" *Peterson v. Groves*, 44 P.3d 894, 896 (Wash. Ct. App. 2002) (quoting *Robinson v. City of Seattle*, 830 P.2d 318, 345 (Wash. 1992)). Equitable estoppel requires: "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act." *Logan v. North-West Ins. Co.*, 724 P.2d 1059, 1062 (Wash. Ct. App. 1986); *see also Peterson*, 44 P.3d at 896. Further, the "other" party's reliance on the admission, statement, or act must be justifiable. *Buchannan v. Switz. Gen. Ins. Co.*, 455 P.2d 344, 349 (Wash. 1969); *Robinson*, 830 P.2d at 345. In sum, "[a]n insurer will be estopped from insisting upon a forfeiture if the insurer's agreement, declaration, or course of action leads the insured to conduct based on that insured's honest belief that forfeiture of his policy will not occur." *Logan*, 724 P.2d at 1062. "Once a suit has been brought, more positive evidence of misleading conduct should be required because the parties are dealing at arms length." *Id.*

The Reeds argue that "the acts of Allstate throughout the spring and summer of 2010, when the suit limitation provision supposedly was to expire, are inconsistent with

ORDER- 15

their claim now—that the suit limitation provision would be enforced." (Resp. at 16.) In particular, the Reeds point to the fact that Allstate filed motions to compel document production in state court and responded to the Reeds' motion to compel more than one year after the fire. (*Id.*) Accordingly, the Reeds maintain that Allstate's position now—that the suit limitation bars their claims—is inconsistent with its actions after the expiration of the limitation period. (*Id.*) They assert that their "actions were on the faith of Allstate's conduct in continuing the claims administration" and that they would be injured if Allstate were allowed to benefit from administering the Claim through and after the suit limitation period. (*Id.* at 16-17.) The Reeds contend that they "were lured into believing that Allstate would be actually participating in claims administration, regardless of the suit limitation provision." (*Id.* at 17.)

The Reeds' arguments are unavailing. They have presented no evidence upon which a reasonable juror could conclude that Allstate's actions reasonably delayed the Reeds filing their lawsuit. The material evidence, viewed in the light most favorable to the Reeds, establishes the following sequence of events: in the fall of 2009, the Reeds began to complain to Allstate about the handling of their Claim; Allstate notified the Reeds of the one-year suit limitation provision in a letter dated October 31, 2009; after Allstate provided the Reeds with its valuation of their loss in November 2009, the interactions between the parties became increasingly contentious; in December 2009, the Reeds accused Allstate of violating several laws in handling their Claim; throughout the end of December 2009 and the first few months of 2010, each party repeatedly demanded explanations and documentation from the other, and neither acquiesced to the other's

demands; in early 2010, the parties agreed to submit the Claim to independent appraisal, but Allstate halted to appraisal process pending the production of documents by the Reeds; the independent appraisal could have continued even without the documents Allstate sought from the Reeds; and in March 2010, Allstate sought a court order compelling the Reeds to produce documentation.[7] (*See generally supra* § II.)

Even viewing the evidence in the light most favorable to the Reeds, no reasonable juror could conclude that Allstate's actions prevented the Reeds from timely filing suit or lured the Reeds into reasonably believing that an additional amount would be paid. *See Logan*, 724 P.2d at 1062-63. Indeed, there is no evidence that Allstate ever waivered in its valuation of the Claim. Although Allstate continued to investigate the Claim through the expiration of the limitation period, if anything, its actions should have alerted the Reeds as to the potential for litigation. As only one example noted above, in December 2009, several months before the expiration of the limitation period, the Reeds' public adjustor accused Allstate of violating numerous laws in its handling of the Claim. The Reeds could have brought suit at this time but they did not. Further, viewing the evidence in the Reeds' favor, Allstate unreasonably halted the appraisal process and then sought a state court order compelling document production. As is their burden, the Reeds have not come forward with "more positive evidence of misleading conduct," *id.* at 1062,

---

[7] The court notes that although the Reeds cite Allstate's behavior *after* the suit limitation period expired as evidence supporting equitable estoppel, the court's focus is on Allstate's behavior *before* the limitation period expired because the central question is whether Allstate acted to delay the filing of the Reeds' suit beyond the limitation period. *See Robinson*, 830 P.2d at 345 (Wash. 1992).

and therefore the court concludes that they are not entitled to bring the question of equitable estoppel to the jury.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Allstate's motion for partial summary judgment regarding the one-year suit limitation (Dkt. # 12).

Dated this 16th day of February, 2012.

JAMES L. ROBART
United States District Judge